UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB DAVID LAMAR,<br><br>             Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No.  1:24-cv-00504-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 14, 16). |

This matter is before the Court on Plaintiff Jacob David Lamar's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his applications for disability insurance benefits and supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

Plaintiff raises the following issues:

A. The Administrative Law Judge ("ALJ") erred by failing to adopt or explain the rejection of Dr. Mair's opined limitations, despite finding her opinion persuasive.

B. The residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ discounted Dr. Seward and Dr. Willis' opinions without setting forth specific, legitimate reasons.

1

Having reviewed the record, administrative transcript,[1] parties' briefs, and the applicable law, the Court finds as follows.

## I. ANALYSIS

Plaintiff's arguments challenge the ALJ's formulation of the following mental RFC:

> The claimant can understand, remember, and carry out simple instructions, make commensurate work related decisions, respond appropriately to supervision, co-workers, and work situations, deal with routine changes in the work setting and maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday, is suitable for jobs requiring no interaction with the public, and can be around co-workers throughout the day but can have only occasional interaction with them.

(AR 699).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal citation omitted).

Here, Plaintiff asserts that the mental RFC is not supported by substantial evidence because the ALJ erred in his assessment of the opinions of consultative examiners Dr. Barbara Mair, Psy.D., and Dr. G. Seward, Psy.D., and the opinion of Plaintiff's primary care physician,

---

[1] ECF No. 11-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

Dr. Daniel Willis, M.D.[2] The Ninth Circuit has held the following regarding the ALJ's consideration of such opinions:

> "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id. (quoting Bayliss, 427 F.3d at 1216); see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).[3]

**A. Dr. Mair's Opinion**

On April 1, 2017, Dr. Mair conducted a psychological consultative examination of Plaintiff and completed a MRFC assessment as to specific limitations in mental functioning. (AR 1037–41). Dr. Mair specifically opined that Plaintiff was mildly impaired in his abilities to perform detailed and complex tasks, deal with usual stress encountered in the workplace, and perform work activities on a consistent basis without special or additional instruction. (AR 1041). Dr. Mair additionally opined that Plaintiff was moderately impaired in his ability to maintain regular attendance and complete a normal workweek without interruptions from a psychiatric condition. (Id.) Dr. Mair also found that Plaintiff was unimpaired in all remaining areas—e.g., his ability to perform simple and repetitive tasks, to accept instructions from supervisors, and to interact with coworkers and the public. (AR 1040–41).

The ALJ assigned great weight to Dr. Mair's opinion, discussing the opinion as follows in his written decision:

> The claimant appeared at a psychological consultative examination on April 1,

---

[2] Dr. Willis is incorrectly identified as "David Will, M.D." in the ALJ's written decision. (AR 705).
[3] Because Plaintiff filed his applications for disability insurance benefits and supplemental security income on January 14, 2017 (notably, before March 27, 2017), 20 C.F.R. §§ 404.1527 and 416.927 apply in considering the weight given to the medical source opinions. For applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c apply in considering medical opinions; notably, no deference or specific evidentiary weight is given to medical opinions.

> 2017. He endorsed recent diagnoses of depression and anxiety, with the former setting in after he had to stop working after his onset of vertigo. He reported difficulty breathing and a fight or flight reaction during panic episodes. He said he has trouble being around people and has had to leave stores when they became too crowded. He stated he did not want to be around family and that there are days when he does not leave his bedroom. The claimant had some difficulty during memory testing and his insight into his own problems was impaired. (Ex. 11F).
>
> . . .
>
> Barbara Mair, Psy.D, who performed the claimant's 2017 psychological consultative examination, stated the claimant has a mild impairment in performing detailed and complex tasks, perform work activities on a consistent basis, and deal with usual workplace stressors and a moderate impairment in the ability to maintain regular attendance and complete a normal work week. (Ex. 11F). I give this opinion great weight overall. The claimant has a history of mental health treatment during which he endorsed ongoing symptoms that included anxious and fearful thoughts, social anxiety, a depressed mood, difficulty falling asleep, difficulty staying asleep, diminished interest and pleasure, and excessive worry. (Ex. 6F/55, 62, 76; Ex. 8F/12; Ex. 11F). However, he is independent in activities of daily living. (Ex. 16F). Treatment records note him to be doing well with medication and he refused a referral to specialized mental health services in April of 2023, stating instead that he was doing well and feeling fine. (Ex. 12F/535). A later psychological consultative examination found only minimal findings. (Ex. 16F).

(AR 702, 704–05).

Plaintiff contends that while the ALJ afforded great weight to Dr. Mair's opinion, he assessed a mental RFC that did not account for Dr. Mair's opined moderate limitation in Plaintiff's ability "to maintain regular attendance and complete a normal workweek without interruptions from a psychiatric condition." (ECF No. 14 at 10–13 (citing AR 704–05, 1041)). Plaintiff contends the ALJ's failure to adopt or explain his rejection of Dr. Mair's opined moderate limitation constitutes reversible error. The Commissioner counters that the ALJ sufficiently accounted for Plaintiff's moderate limitation in maintaining regular attendance and completing a workweek without interruption by limiting his RFC to simple, routine work with restrictions on peer and public contact and concentration, persistence, and pace. (ECF No. 16 at 4).

Upon review, the Court agrees with Plaintiff that, having assigned great weight to Dr. Mair's opinion, the ALJ was required to incorporate Dr. Mair's opined moderate limitations or otherwise explain why the ALJ did not endorse them. The ALJ had no duty to credit Dr. Mair's opinion, but once the ALJ did, "the ALJ was under an obligation to account for [the moderate

4

limitations assessed] irrespective of the broader reasoning in support of the RFC." Harrell v. Kijakazi, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *4 (E.D. Cal. Sept. 27, 2021); Wascovich v. Saul, 2:18-cv-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) (citing Betts v. Colvin, 531 F. App'x 799, 800 (9th Cir. 2013)) ("where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC."); Sahyoun v. Saul, No. 2:18-cv-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020) ("Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them."); Morinskey v. Astrue, 458 F. App'x 640, 641 (9th Cir. 2011) (determining that reversal was necessary where the ALJ assigned substantial weight to examining physician's opinion, but failed to "make findings setting forth specific, legitimate reasons for rejecting [the physician's] opinion that [the claimant's] abilities to maintain regular attendance, to sustain an ordinary routine, and to complete a normal work day or week without interruption from his bi-polar disorder were moderately impaired") (internal quotation marks omitted).

Insofar as the Commissioner argues that the other limitations in the RFC adequately account for Dr. Mair's opined moderate limitations in Plaintiff's ability to maintain regular attendance and complete a workweek, the Court finds the Commissioner's argument unavailing. As one court has recently noted, although there is a "split" on this issue, the caselaw "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations [of] . . . maintaining regular attendance[ ] and completing a normal workweek without interruption." Harrell, 2021 WL 4429416, at *6 (collecting cases); see also Berenisia Madrigal v. Saul, No. 1:18-cv-01129-SKO, 2020 WL 58289, at *5 (E.D. Cal. Jan. 6, 2020) (concluding that limitation to simple, routine tasks with limited peer and public contact did not account for "moderate limitations completing a normal workday or work week due to her psychiatric condition, moderate difficulties dealing with stress and changes encountered in the workplace, and an up to moderate likelihood that she would emotionally deteriorate in a work environment"). This is because a limitation to simple and repetitive tasks addresses "concentration, attention, persistence, or pace" but would not adequately account for "Plaintiff's ability to . . . maintain regular attendance in the workplace and perform work activities on a

5

consistent basis . . . ." Donna M. v. Saul, No. 19-cv-03134-DMR, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020).

Similarly, the other limitations imposed in the RFC – in the areas of concentration, persistence, or pace, and the ability to deal with routine changes and respond to supervision, coworkers, and work situations – do not fully account for whether Plaintiff has the ability to regularly attend work and complete a full day without interruptions from his mental impairments. See Nanney v. Kijakazi, No. 1:21-cv-00527-HBK, 2023 WL 8242052, at *5 (E.D. Cal. Nov. 28, 2023) ("The Court finds the RFC limiting Plaintiff to understanding, remembering, and carrying out simple instructions, maintaining concentration, persistence, and pace for 2-hour intervals, occasionally interacting with coworkers and the general public, and adapting to simple workplace changes, does not account for Dr. Bonilla's findings of moderate limitations in Plaintiff's ability to complete a normal workday/work week and the likelihood of emotional deterioration."); Lara v. Saul, No. 2:19-cv-1527-EFB, 2020 WL 5603630, at *3 (E.D. Cal. Sept. 18, 2020) ("Nothing in the RFC adequately accounts for Dr. Stenbeck's limitations regarding attendance or completion of a work day. To be sure, the RFC does note that plaintiff only has the capacity to 'tolerate a low level of work pressure defined as work with no multitasking or detailed job tasks,' but this limitation does not account for the plaintiff's baseline problems with depression and coping.").

Accordingly, because the ALJ failed to properly address Dr. Mair's opinion that Plaintiff is moderately limited in his ability to maintain regular attendance and complete a normal workweek without interruptions from a psychiatric condition, the Court concludes that the ALJ's mental RFC assessment is not supported by substantial evidence.

**B.  Dr. Willis' Opinion**

Next, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Plaintiff's primary care physician, Dr. Willis. (ECF No. 14 at 15–16). Although Dr. Willis issued an opinion addressing both physical and mental limitations, Plaintiff only challenges the ALJ's treatment of Dr. Willis' opined mental limitations. The Court will accordingly limit its review to the ALJ's consideration of Dr. Willis' opined mental limitations.

In his medical source statement, Dr. Willis reported that he began treating Plaintiff in 2016 for depression, anxiety, and vertigo. (AR 525). Dr. Willis noted that Plaintiff frequently

experienced symptoms of generalized persistent anxiety, psychomotor agitation or retardation, emotional lability, sleep disturbances, oddities of thought, perception, speech or behavior, poor memory, social withdrawal or isolation, difficulty thinking or concentrating, appetite disturbance with weight change, and recurrent panic attacks. (AR 527). Dr. Willis opined that as a result of his impairments, Plaintiff would miss five or more days of work each month, be off-task more than twenty-five percent of the time, and require more than forty-five minutes of unscheduled breaks during an 8-hour workday. (AR 525). With regard to specific mental functional limitations, Dr. Willis opined that Plaintiff was extremely limited in his abilities to deal with normal work stress, work in coordination with others, follow basic instructions, stay on task, and maintain social functioning. (AR 527). Dr. Willis also opined that Plaintiff had marked limitations in the areas of concentration, persistence or pace as well as reporting to work on time every day. (Id.) Finally, Dr. Willis indicated that Plaintiff would experience "monthly episodes of deterioration or de-compensation in work-like settings" on a continual basis. (Id.)

The ALJ ultimately assigned little weight to Dr. Willis' medical source statement, specifically addressing Dr. Willis' opined mental limitations as follows:

> I give [Dr. Willis'] opinion little weight. The claimant's mental health treatment has been routine and conservative, with no evidence of any, much less continual, decompensations. The record does not document any emergency department visits or inpatient admissions for mental health treatment. The two psychological consultative examinations noted only mild findings. (Ex. 11F; Ex. 16F).

(AR 705). The two psychological consultative examinations the ALJ cited to were Dr. Mair and Dr. Seward's reports. (AR 1037–41 (Dr. Mair, Ex. 11F); AR 1771–77 (Dr. Seward, Ex. 16F)).

Plaintiff argues that remand is necessary because the ALJ failed to set forth specific and legitimate reasons for assigning little weight to Dr. Willis' opined mental limitations. (ECF No. 14 at 15–16). The Commissioner counters that the ALJ properly discounted Dr. Willis' opinion due to the lack of corroborating objective medical evidence and the opinion's inconsistency with Dr. Mair and Dr. Seward's consultative examination findings. (ECF No. 16 at 8–9).

"An ALJ may properly reject a treating physician's opinion if it is not well-supported." Fleenor v. Berryhill, 752 F. App'x 451, 452 (9th Cir. 2018). "However, the ALJ must evaluate the opinion according to factors such as the length, nature, and extent of the treatment relationship; frequency of examination; supportability; and consistency with the overall record." Id. Here, upon

review, the Court agrees with Plaintiff that the ALJ's assessment of Dr. Willis' opined mental limitations was insufficient. The first reason the ALJ gave for discounting Dr. Willis' opined mental limitations was Plaintiff's "routine and conservative" mental health treatment. (AR 705). The ALJ, however, offered no explanation as to how Plaintiff's mental health treatment – which included multiple psychotropic medications and consistent complaints of anxiety, panic attacks, and depression – was conservative or routine in nature.[4] Nor did the ALJ explain how Dr. Willis' opined mental limitations were undermined by such treatment. In fact, while the ALJ addressed specific treatment records at length in his evaluation of Dr. Willis' opined physical limitations,[5] he did not cite to any mental health records in his discounting of Dr. Willis' opined mental limitations. To reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). Thus, the ALJ's conclusory assertion regarding the nature of Plaintiff's mental health treatment did not constitute a specific, legitimate reason for rejecting Dr. Willis' opined mental limitations.

The second reason the ALJ gave for discounting Dr. Willis' opined mental limitations was the lack of evidence of continual decompensations, emergency room treatment or psychiatric hospitalization. However, the fact that Plaintiff "was not psychiatrically hospitalized does not mean that he did not have a mental health impairment that prevented him from working." Morales v. Berryhill, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) (holding that an ALJ's rejection of a treating psychiatrist's opinion for lack of psychiatric hospitalization was not specific and legitimate because "[a] claimant may suffer from mental health impairments that prevent him from working but do not require psychiatric hospitalization."); see also Schiaffino v. Saul, 799 F.

---

[4] See, e.g., AR 1096–97 (depression screening with results in the severe range); AR 630 (positive depression screening); AR 1091 (anxiety, panic attacks, difficulty sleeping); AR 1101, 1106, 1375, 1386, 1391, 1396, 1443, 1460 (prescribed psychotropic medications hydroxyzine, buspirone, venlafaxine); AR 1108 (prescribed effexor for anxiety/panic disorder).

[5] The ALJ's evaluation of Dr. Willis' opined physical limitations cited to multiple records:
> As for [Dr. Willis'] opinion on the claimant's physical functioning, the claimant's treatment has been routine []and conservative, with multiple records noting no muscle atrophy, no weakness, no gait impairment, and no spine instability. **(Ex. 9F/23, 28, 32, 36; Ex. 12F/104, 189, 205, 275, 349, 490).** They routinely noted no sensory or motor deficits. **(Ex. 12F/32, 63, 119, 204, 460).** He frequently, nearly to the point of consistently, described himself as "doing well." **(Ex. 12F/28, 83, 179, 360, 389, 477, 507).** His vertigo is generally well controlled and the treatment records note no significant complications of his hernia or his asthma, **(Ex. 9F; Ex. 17F/26, Ex. 12F). (Ex. 9F; Ex. 17F/26, Ex. 12F).**

AR 705 (emphasis added).

App'x 473, 476 (9th Cir. 2020) ("Hospitalization is not required to show that mental health conditions such as PTSD, OCD, and anxiety are disabling from employment."). The ALJ did not account for the fact that Dr. Willis, as Plaintiff's treating primary care provider, was undoubtedly aware of Plaintiff's treatment history, including the lack of psychiatric emergency care or hospitalization, when he issued his opinion assessing several extreme and marked mental functional limitations. Therefore, the lack of psychiatric inpatient or emergency care was not a legitimate reason, by itself, to reject Dr. Willis' opined mental limitations.

Finally, the ALJ indicated that Dr. Willis' opined mental limitations were inconsistent with the "mild findings" of Dr. Mair and Dr. Seward. However, the ALJ did not set forth what he meant by "mild findings" in the consultative examiners' reports. In fact, both consultative examiners assessed functional limitations that went above a mild degree of limitation—specifically, Dr. Mair assessed moderate functional limitations, and Dr. Seward assessed several marked and extreme limitations. Moreover, the ALJ assigned little weight to Dr. Seward's opinion, but inexplicably proceeded to rely on purported "mild findings" in Dr. Seward's report to discount Dr. Willis' opinion. Without an explanation as to how Dr. Willis' findings were inconsistent with the findings of the consultative examiners, this was not a specific, legitimate reason to reject Dr. Willis' treating source opinion.

Based on the foregoing, the Court concludes that the ALJ failed to provide specific, legitimate reasons supported by substantial evidence to reject Dr. Willis' opined mental limitations.

**C. Dr. Seward's Opinion**

Lastly, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Seward's opinion. (ECF No. 14 at 12–15).

On February 19, 2021, Dr. Seward conducted a psychological consultative examination of Plaintiff. (AR 1771–77). Dr. Seward reviewed Plaintiff's past medical history, performed a complete psychological evaluation with a mental status examination, and administered the Wechsler Adult Intelligence Scale (WAIS-IV) and Wechsler Memory Scale (WMS-IV) tests. (Id.) As to Plaintiff's performance on the WAIS-IV test, Dr. Seward observed that:
> The claimant consistently scored within the Average range of intellectual functioning compared to same-aged peers across three of the four measured

9

> domains. His notable weakness was demonstrated within the PSI [processing speed index] domain (Borderline), which is consistent with his report of focus and concentration difficulties. The claimant's overall estimated FSIQ [full-scale IQ] score places him within the Low Average range of intellectual functioning and is not indicative of an intellectual disability.

(AR 1775). As to Plaintiff's WMS-IV testing results, Dr. Seward noted that:

> Overall, the claimant's test results indicate that the claimant demonstrates some memory deficits. In particular, the claimant struggled to recall information presented verbally. This is consistent with his claim of having difficulties sustaining focus. In a work setting, the claimant may struggle to recall and perform instructions that are presented verbally.

(AR 1776).

Based on his examination, Dr. Seward concluded that Plaintiff does not have deficits in attention and concentration, but "struggles at times to sustain focus and process information." (Id.) Dr. Seward diagnosed Plaintiff with major depressive disorder and cannabis dependence, and assessed mild to marked limitations in various mental work-related abilities. (AR 1776–77). Specifically, Dr. Seward opined that Plaintiff was markedly limited in his ability to complete a normal workday or workweek without interruptions resulting from his psychiatric condition. (AR 1777). Dr. Seward also opined that Plaintiff was moderately limited in several areas: maintaining regular attendance in the workplace; performing work activities on a consistent basis; understanding, remembering and performing complex written and oral instructions; performing work activities without special or additional supervision; and dealing with usual stresses encountered in a competitive work environment. (AR 1776–77). In addition, Dr. Seward opined that Plaintiff was mildly limited in his ability to: understand, remember and perform simple written and oral instructions; accept instructions from supervisors; and interact with coworkers and the public. (Id.) Dr. Seward indicated that the above limitations were "due to functional deficits associated with a mood disorder." (AR 1776–77).

The ALJ assigned little weight to Dr. Seward's opinion, discussing the opinion as follows in his written decision:

> G. Seward. Psy.D, who performed the claimant's February 19, 2021 psychological consultative examination, stated the claimant has marked limitations completing a normal work day or work week without interruptions, moderate limitations understanding, remembering, and understanding complex instructions, maintaining attendance, performing work on a consistent basis and without special supervision, and dealing with usual work stressors, and mild limitations understanding,

> remembering, and performing simple instructions, accepting instruction from supervisors, and interacting with co-workers and the public. (Ex. 16F). I give this opinion little weight. Dr. Seward based this opinion on the claimant's "functional deficits associated with a mood disorder." However, the claimant's full-scale IQ score of 88 during Dr. Seward's examination placed him in the low average range[.] Other than processing speed, all the claimant's subset scores in WAIS-IV were in the average range. While the claimant appeared nervous during the evaluation, that nervousness did not translat[e] into any significant functional deficits, as the claimant's mental status examination was for the most part unremarkable. (Ex. 16F). The claimant's treatment remained routine and conservative, with no inpatient admissions or emergency department visits for decompensations. His treatment records at Pixley consistently noted him to awake, alert, and well groomed, with no indication of any significant observed psychological findings. In April of 2023, the claimant explicitly declined a referral to specialized mental health services, stating instead that he was doing well and feeling fine. (Ex. 12F/28, 127, 251, 522, 535).

(AR 702–03, 705).

Upon review, the Court finds the ALJ provided specific, legitimate reasons for rejecting Dr. Seward's opinion. The ALJ reasonably rejected Dr. Seward's opined functional limitations where the results of Plaintiff's subset scores in the WAIS-IV test were all in the average range, save for one domain (processing speed index). The ALJ also pointed to specific evidence in the record that was suggestive of adequate mental functioning such as normal mental status examinations and Plaintiff's self-reports.[6] While Plaintiff argues that certain records could support a different conclusion as to the medical evidence, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld." Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Finally, while the ALJ referenced the lack of psychiatric hospitalizations, which alone would have been an insufficient basis for assigning little weight to Dr. Seward's opinion, the ALJ provided other specific, legitimate reasons for discounting Dr. Seward's opinion. Thus, the Court concludes that Plaintiff

---

[6] The ALJ specifically cited to the following mental health records: AR 1071 (August 28, 2019 office visit where Plaintiff appeared "awake and alert, well groomed" and stated he was "doing well"); AR 1170, 1294, 1578 (office visits where Plaintiff appeared "awake and alert, well groomed" and no observed psychological findings were noted upon examination); AR 1565 (January 13, 2023 telephonic consultation where Plaintiff reported he was doing well, declined "services w/ Psych" and denied having suicidal or homicidal ideations).

has not shown error in the ALJ's treatment of Dr. Seward's opinion.

## II.     CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   **January 28, 2025**         /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE